UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Frank Halama, | : | Case No. 1:09CV1552 |
| Plaintiff | : | Judge Dan A. Polster |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff applied for benefits on November 8, 2005, alleging an onset date of August 6, 2005. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "colon problems, nerve damage in left arm, heart problems" and "I cannot lift anything up because my left arm is basically useless because of the nerve damage on it.  I have to constantly use the bathroom.  I have colitous [sic]."

Upon denial of the plaintiff's claims on the state agency level hearing de novo before an

Administrative Law Judge (ALJ) was requested.  An evidentiary was convened by teleconference on September 10, 2008, with the plaintiff, his counsel, and a vocational expert, Mr. Ted Macy, in Cleveland, Ohio and the ALJ in Falls Church, Virginia.

Although in his application the plaintiff alleged that his inability to work was by reason of physical (exertional) impairments, at the outset of the hearing his counsel stated that the basis of the claim that was being advanced was mental/emotional (non-exertional) impairments. With regard to the plaintiff's physical status his counsel acknowledged that the objective medical evidence pertinent thereto did not reflect any abnormalities.

In his testimony the plaintiff maintained that he did suffer from chest pain, shortness of breath, fatigue and diarrhea,[1] but stated that his psychiatrist had told him that all of those were secondary to stress and anxiety from which he suffers.  He also testified to having "[P]roblems with relating to my friends or relatives.  If I go to visit them or talk to them, I get upset over every little thing, and I have panic attacks."  He testified that this problem existed while he was employed, resulting in his inability to concentrate on his work, leading to his being put on sick leave for six months and being terminated at the end of that period.

In his examination of the vocational expert the ALJ postulated a hypothetical question assuming an individual of the plaintiff's personal/vocational profile who had the residual functional capacity for medium level work and with "a mild limitation on activities of daily living, mild limitations on social interaction, mild limitations on concentration, persistence of pace, and other social decomposition, otherwise able to do a full range of unskilled work but not necessarily limited to unskilled work."  Mr. Macy testified to a variety of jobs such an individual could perform.  When

---

[1] As far as his stomach problems are concerned the plaintiff stated he was "diagnosed at one time with colitis but they've seemed, you know, think that it's cleared up.  But I was treated for that at one time."

2

examined by plaintiff's counsel Mr. Macy testified that if such a person would be off task by reason of stress reaction up to fifteen percent of the time he would not be employable. He also stated that if "the Claimant has poor or no ability in four different areas including the ability to complete a normal work week, work day without psychologically based symptoms and his ability to deal with stress" the plaintiff would be unemployable.

On October 8, 2008 the ALJ entered his opinion denying plaintiff's claims. That decision became defendant's final determination upon denial of review by the Appeals Council on June 5, 2009. The ALJ's "Findings of Fact and Conclusions of Law" were:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since January 1, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571, *et seq*.).

3. The claimant has the following severe impairment: An Adjustment Disorder with Mixed Anxiety and Depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, the claimant can lift, carry, push and pull up to 50 pounds occasionally, 25 pounds frequently, stand for 4 hours in an 8 hour workday, walk for 4 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 4, 1952 and was 52 years

      old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On this appeal the argument that "The ALJ's Assessment of Mr. Halama's physical and mental residual functional capacity is not supported by substantial evidence and requires reversal or remand" is advanced.  Subsidiary to this generalized proposition it is argued that "Mr. Halama does not retain the physical functional capacity for medium and light work" and that "The ALJ's assessment of Mr. Halama's mental limitations was legally insufficient and lacks the support of evidence of record."

There are two major flaws in the argument that the ALJ erred in not finding that the plaintiff was limited by reason of physical impairments, which largely rests upon a "Medical Source Statement: Patient's Physical Capacity" form completed by Dr. Daniel Shank in August 2008.

First, this position is, in this Courts opinion, clearly an appellate afterthought.  Not only was it not advanced to the ALJ, but it is at odds with the representation to the ALJ that the basis of the plaintiff's alleged disability was a mental/emotional impairment.  The ALJ can hardly be faulted for not finding the plaintiff disabled on a basis that was asserted before him.

Second, that form called for a statement of the medical findings that supported the doctor's assessment of the plaintiff's limitations/capabilities in several areas. Dr. Shank did not set out any medical findings. Rather, he indicated that the plaintiff's restrictions were secondary to pain complaints. As the ALJ quite correctly found, there is no objective medical evidence of impairments which would reasonably account for complaints of debilitating pain and/or significant physical limitations.[2]

The ALJ's assessment of the plaintiff's mental/psychological state is, in this Court's opinion, an entirely different matter.

The record contains evidence of ongoing mental health counseling at the Metro Health System facility covering the period June 2006 through November 2007. For most of that period his primary counselor was Mr. William Zrenner. Mr. Zrenner, however, worked under the supervision of Dr. Toni Johnson, who appears to be a psychiatrist, and each of the notes entered by Mr. Zrenner was accepted and co-signed by Dr. Johnson.

Under date of July 3, 2006 a "Medical Source Statement: Patient's Mental Capacity" form was signed-off by both Dr. Johnson and Mr. Zrenner. Therein 'Poor or None" was checked off for the following work related abilities: maintain attention and concentration for extended two hour segments; respond appropriately to changes in routine settings; deal with the public; function independently without special supervision; work in co-ordination with or proximity to others without being unduly distracted or distracting; deal with work stresses; complete a normal workday without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

---

[2] In fact, it is admitted in plaintiff's brief that "Mr. Halama's physical disorders primarily centered around pain complaints with little objective explanation for the plaintiff's problems."

5

In January of 2008 Dr. Johnson and Mr. Zrenner completed a second such form. At that time they checked off "Poor or None" for the following abilities: maintain attention and concentration for extended periods of two hour segments; maintain regular attendance and be punctual within customary tolerances; deal with work stresses; and, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

While one need not be a vocational expert to recognize that someone with the limitations set out in the 2008 form, (even through reflecting some improvement from 2006), is unemployable, when plaintiff's counsel asked Mr. Macy "We have a [inaudible] from a treating source, Dr. Johnson, who indicates the Claimant has poor or no ability in four different areas including the to complete a normal workweek, workday without psychologically based symptoms and his ability to deal with stress. Would there be any work available in those circumstances?" the answer was "No."

In this Court's opinion, the inescapable fact is that the ALJ's rejection of this evidence is simply an exercise in substituting his opinion as to the plaintiff's mental/psychological state for that of the plaintiff's treating sources. This violates what is know as the "treating physician" rule, which was expressed in <u>Walker v. Secretary of Health and Human Services</u>, 986 F.2d 1066, 1070 (6th Cir. 1992) in the following terms:

> The medical opinion of the treating physician is to be given substantial deference and, if that opinion is not contradicted, complete deference must be given. The reason for such a rule is clear. The treating physician has had a greater opportunity to examine and observe the patient. Further, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians.

While it is true that the ultimate decision of disability is with the ALJ, <u>ibid</u>, if the ALJ discredits the opinion of a treating source he/she must articulate a cogent reason for doing so, <u>Wilson</u>

6

v. Commissioner of Social Security, 378 F.3d 451, 545 (6th Cir. 2004).  In this Court's opinion the ALJ's stated reasons for discounting the conclusions of the plaintiff's mental health treating sources fall far short of this standard.

>He stated:

>>As they are neither consistent with, nor supported by, the evidence of record, I have assigned the medical opinions of Toni Johnson, M.D., little weight in this case (Ex. 28F, 34F).  On July 10, 2007, Dr. Johnson signed off on a "Medical Source Statement: Patient's Mental Capacity" form outlining the impact that the claimant's impairment has on his ability to engage in work related activities 9Ex. 28F).  Of the 21 criteria explored by Dr. Johnson, it was opined that the claimant had no useful ability to function in a competitive setting in 10 (Ex. 28F).  For example, the doctor found that, as a result of his impairment, the claimant had no useful ability to function in a competitive setting when it came to relating predictably in social situations (Ex. 28F).  However, as noted above, although they get on his nerves when they insist that "he should be working," the claimant does have friends that he engages in social activities with (Ex. 30F).  Dr. Johnson supplemented her original medical opinion on January 14, 2008, by signing off on yet another "Medical Source Statement: Patient's Mental Capacity" form (Ex. 34F).  Although I find that this second medial opinion also underestimates the claimant's ability to function, I pause to note that it stands as a reflection of marked and substantial improvement in his adjustment disorder with mixed anxiety and depression (Ex. 28F, 34F).  Of the same 21 criteria evaluated, Dr. Johnson found that the claimant now had no useful ability to function in a competitive setting in only 4 (Ex. 34F).  However, I recognize that even Dr. Johnson's second medical opinion, and the marked improvement it reflects, underestimates the claimant's actual functioning ability.  As such, after reviewing the entire record, and noting that it is neither consistent with, nor supported by, the evidence contained therein, I have assigned the medical opinions of Dr. Johnson little weight in this case.

What is notable about the foregoing, is the fact that the plaintiff has friends who get on his nerves by telling him he should be working has no bearing on his ability to work and, more importantly that the "only 4" areas of no useful ability to function in a competitive setting alluded to by the ALJ are those which Mr. Macy testified would render the plaintiff unemployable.

Based upon the foregoing, this Court finds that the defendant's final determination can not be considered as supported by substantial evidence within the standards of Richardson v. Perales, 402 U.S. 389, 401 (1971). It is, accordingly, recommended that it be reversed and that final judgment be entered in plaintiff's favor finding that he is entitled to an award of the benefits sought, based upon the evidence originating with his treating mental health sources.[3]

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   October 27, 2010

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[3] In the alternative, at the very least the action should be remanded for a further hearing at which testimony could be taken from a mental health professional regarding the plaintiff's mental/psychological state and its bearing upon his ability to engage in substantial gainful work activity.